IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN D. MCCLELLAN, </br></br>Plaintiff</br></br>v.</br></br>READY MIXED CONCRETE COMPANY OF ERIE, INC., SERV-ALL CONCRETE, INC., JAMESTOWN MACADAM, INC., and E.E. AUSTIN & SON, INC.</br></br>Defendants. | Civil No. 13-87 Erie |

## MEMORANDUM OPINION and ORDER ON DISCOVERY MOTIONS

Presently before the Court are two Discovery Motions filed by Defendants E.E. Austin & Son, Inc., Ready Mixed Concrete Company of Erie, Inc., and Serv-All Concrete, Inc. A Motion for a Protective Order and to Preclude the Use of Sworn Witness Statements Taken in Violation of the Rules of Professional Conduct (ECF No. 59), and a Motion to Disqualify Robert Edwards from Testifying for and Consulting with Any Party (ECF No. 69). For the reasons that follow we will deny the motions.

The procedural history of this case involves four separate legal actions all arising out of the same accident. On May 10, 2012, while working for Defendant E.E. Austin, Plaintiff Kevin D. McClellan was injured when a hose used to pour concrete whipped and struck him. Shortly thereafter Workers' Compensation claims were commenced by E.E. Austin in Pennsylvania (where the accident occurred and where E.E. Austin is located) and by Plaintiff in New York (where Mr. McClellan resides). A question of which forum had jurisdiction arose and was

apparently litigated. On August 3, 2012, Mr. McClellan filed his first civil action based on the accident in this Court at Civil No 12-178 Erie. This action was voluntarily dismissed without prejudice due to issues concerning the proper parties to be sued. On March 28, 2013, Mr. McClellan filed the within action also arising out of the same May 10, 2012 accident

**Motion for a Protective Order and to Preclude the Use of Sworn Witness Statements**

In Defendants' first motion they seek an Order precluding all parties from using or making reference to the existence and substance of four E.E. Austin employees' statements procured by Plaintiff's investigator. Defendants characterize the statements as *ex parte* communications taken in violation of the Rules of Professional Conduct because the statements were taken at a time when counsel knew the employees of E.E. Austin were represented with respect to the accident at issue in this case. Additionally, Defendants complain about the manner in which the statements were obtained. Accordingly, if we conclude that Plaintiff's counsel has not violated the Rules of Professional Conduct, Defendants request that we issue a Protective Order prohibiting counsel from questioning the employees at their depositions about the sworn statements.

The statements at issue were taken on July 25, 2012 and July 31, 2012. The interviews were conducted by Plaintiff's retained investigator Lewis R. Barone. The interviews took place at each witnesses' home in New York. The witnesses were sworn in by a stenographer prior to answering questions and the interviews were recorded by the stenographer. Prior to the interviews three of the four witnesses were shown a video depicting an animated recreation of an actual hose-whipping event.

The primary issues we must first address are whether Plaintiff's counsel had actual knowledge that the four employees were represented, and whether the representation was in

connection with the matter being investigated at the time of the interviews. Pennsylvania Code of Professional Conduct Rule 4.2 states as follows:

> In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.

Pa. R. Prof. Conduct 4.2.

Defendants argue that Plaintiff's counsel had actual knowledge that E.E. Austin was represented as of July 25, 2014, and that the "matter" at issue is the May 10, 2012 accident even though Plaintiff did not file his lawsuit until after the interviews occurred. By letter dated July 25, 2012, counsel representing E.E. Austin in the workers' compensation cases forwarded to Plaintiff's counsel a Notice that was sent to the New York State Workers Compensation Board indicating that the right to workers' compensation in New York was being contested (as noted, the contest concerned a jurisdictional, not substantive issue), and included an attorney certification stating that the law firm was the authorized legal representative of E.E. Austin.

We conclude that Plaintiff's counsel did not violate Rule 4.2. Although the letter is dated July 25, 2012, Plaintiff's counsel states that it did not receive the letter until August 17, 2012, and this assertion is not contested by Defendants. We conclude that there is insufficient evidence to establish that Plaintiff's counsel had actual knowledge that the four employees were represented in the matter, nor are there sufficient facts to establish that actual knowledge can be inferred from the circumstances

Moreover the representation of E.E. Austin concerned the controverted Workers' Compensation claim in New York, and specifically concerned whether Pennsylvania or New York had jurisdiction of the Workers' Compensation claim. The representation did not concern the defense of an anticipated personal injury claim. The interviews, in contrast, did not concern

any aspect of the Workers' Compensation claim and instead focused on the accident itself.

In the alternative, Defendants argue that we should enter a Protective Order prohibiting the use of the statements at depositions of the witnesses because of the unorthodox and prejudicial manner in which the statements were taken. To summarize, Defendants' submit that the investigator did not ask the employees if they were represented by a lawyer, or that they had a right to counsel; the employees were placed under oath, were not informed that their statements were subject to the penalty of perjury, or that the statements might be used in subsequent litigation; and the investigator showed a prejudicial video to the employees prior to interviewing them with leading questions that inevitably tainted the employees' testimony in connection with their recall of the actual event. Defendants also note that the questions related to the video depiction are for an expert to address rather than a lay, fact witness. Finally, Defendants indicate that it does not appear that any of the witnesses were permitted to review the transcripts of their interviews for accuracy.

We cannot see a basis on which to preclude the use of the statements at the witnesses' depositions. Defendants' concerns are about the manner of the investigation and resulting potentially tainted statements. The statements of the four witnesses as well as the manner in which they were obtained are issues that go to the weight of the evidence, the credibility of the witnesses, and perhaps the credibility and ethics of the investigator. Defendants are free during the depositions to elicit testimony that the investigator behaved in a prejudicial, intimidating, or otherwise unfair manner when he took the recorded, sworn statements. The witnesses themselves will have the opportunity to explain the circumstances of the interviews and testify at their depositions as to the potential prejudicial effect of the video and whether and to what extent they felt they were bound to answer the questions posed by the investigator.

4

We have no doubt that the showing of the video had an effect, potentially prejudicial, on the subsequent statements of the witnesses. As such, our ruling at this time concerns only whether the statements can be used at depositions and not whether they will ultimately be admitted at trial, or will constitute proper evidence to be relied upon by the Court in a dispositive motion. Accordingly, we will deny Defendants' motion.

## Motion to Disqualify Expert Witness Robert Edwards

In Defendants' second discovery motion, they seek an Order to disqualify Plaintiff's expert witness, Robert Edwards, from testifying for and/or consulting with any party. The circumstances out of which this motion arises are unusual. Mr. Edwards agreed to act as an expert of Defendants' counsel based on the mistaken belief that he had not already been officially retained by Plaintiff's counsel. Because we find no basis to disqualify Mr. Edwards we will deny the motion.

The relevant events occurred as follows. An employee of the law firm representing Plaintiff initially contacted Mr. Edwards in June 2013, and, following additional discussions, Mr. Edwards was retained by counsel for Plaintiff. Affidavit of Robert Edwards, Aug. 6, 2014, ¶¶ 2,3, 9 & 10, attached as Ex. A to P.'s Br. ECF No. 72. In January 2014, counsel for Defendants contacted Mr. Edwards to see if they could hire him as an expert in this case and provided him with sufficient information to determine if he had a conflict. Ex. A attached to Defs.' Br., ECF No. 70. Mr. Edwards checked his records, confirmed that he had communicated with counsel for Plaintiff, but had no record that he had actually been retained. Ex. B, attached to Defendant's Br. In fact, counsel for Plaintiff had sent Mr. Edwards a retainer check, which Mr. Edwards cashed, but apparently did not record in the records he consulted. Edwards Aff. ¶ 9; Ex. H, attached to Defs.' Br.

5

On January 23, 2014, defense counsel told Mr. Edwards in an email to "consider yourself retained" and that defense counsel's law firm wanted to retain him, would pay him as a consultant, and requested that Mr. Edwards send an engagement letter and retainer agreement. Ex. C, attached to Defs.' Br. In this same January 23, 2014 email, defense counsel also included apparently confidential information to Mr. Edwards, indicated as redacted in the email. Id.

On January 31, 2014, Mr. Edwards sent a letter to defense counsel as an invoice for his retainer fee. Ex. F, attached to Defs.' Br. By letter dated February 12, 2014, defense counsel submitted its retainer check to Mr. Edwards along with certain materials for his review (indicated as redacted in the letter). Ex. G, attached to Defs.' Br.

On February 22, 2014, while reviewing paperwork for tax preparation purposes, Mr. Edwards discovered that he had in fact received a retainer check from Plaintiff's counsel and was retained by Plaintiff's law firm. Edwards Aff. ¶ 9. He promptly informed defense counsel of his error, refunded the retainer, and returned the material defense counsel had sent by letter dated February 12, 2014. Ex. H, attached to Defs.' Br.; Edwards Aff. ¶¶ 9, 10.

Mr. Edwards acknowledges that he received the box of material defense counsel sent to him by letter dated February 12, 2014. Edwards Aff. ¶ 7. Mr. Edwards describes the box as being "large enough that the 8.5 by 11 inch papers inside were not folded," and that a "letter was laying on top of the stack of papers and it was unfolded." Id. Mr. Edwards further states that he "saw the letter was from [defense counsel's law firm] and I then closed the box and set it aside without reviewing the letter in detail." Id. Finally, Mr. Edwards states that "[a]t no time did I look at, copy or review the materials sent to me by [defense counsel], which were contained in the box sent on February 12, 2014," and that defense counsel "is aware of this fact." Id. ¶ 8.

Courts have the inherent power to disqualify an expert witness. Butamax Advanced Biofuels LLC v. Gevo, Inc., 2012 WL 4815593, *1 (D.Del. Oct 10, 2012); Syngenta Seeds, Inc. v. Monsanto Co., 2004 WL 2223252, *1 (D.Del. Sept.24, 2004); English Feedlot, Inc. v. Norden Labs., Inc., 833 F. Supp. 1498, 1501 (D. Colo. 1993); Cordy v. Sherwin-Williams Co., 156 F.R.D. 575, 579 (D.N.J. 1994). "[C]ourts have generally adopted a two-part disqualification inquiry: (1) was it objectively reasonable for the party seeking disqualification to have concluded that a confidential relationship existed with the expert; and (2) was confidential or privileged information actually disclosed to the expert." Butamax, 2012 WL 4815593, *1, citing Syngenta, 2004 WL 2223252, *1 (other citations omitted); see also Wang Laboratories, Inc. v. Toshiba Corp., 762 F.Supp. 1246, 1248 (E.D.Va.1991). If both questions are answered in the affirmative then it is more likely that disqualification should result; however, "disqualification is likely inappropriate if either inquiry yields a negative response." Wang Laboratories, 762 F.Supp. at 1248.

We conclude that as of February 12, 2012, it was objectively reasonable for defense counsel to have concluded that a confidential relationship existed with Mr. Edwards. That is the date defense counsel forwarded its retainer check to Mr. Edwards, along with a box of material for his review. We reach this conclusion in part because it is clear that Mr. Edwards does not consider himself retained until he has received and accepted a retainer check from a potential client. In addition, we conclude that Defense counsel's January 23, 2014 email in which he stated to Mr. Edwards to consider himself retained did not establish the confidential relationship. Mr. Edward's January 23, 2014 email in which he stated that he reviewed his files and discovered that he had not officially been retained by Plaintiff's counsel is instructive. He concluded this email by stating to Defense counsel:

7

> If you'd like me to look at the facts, I will. If it's clearly a problem with the pump company, I may back out and recommend someone else, or I could continue on a behind the scenes basis, if desired.
> If you'd rather just talk to one of my colleagues now, I'd be happy to recommend a couple.

Ex. B. Therefore, Mr. Edwards left open the possibility that there could be a problem with his serving as an expert for Defendants, and that despite his belief that he had not been retained by Plaintiff's counsel, stated that he had not yet agreed to work for Defendant's counsel.

We also conclude that confidential or privileged information was not actually disclosed to Mr. Edwards. As for the brief redacted information contained in the January 23, 2014 email from defense counsel to Mr. Edwards, as noted above we find that this information was transmitted prior to the existence of a confidential relationship being formed. In this regard, Defense counsel's communication of information in the January 23, 2014 email before a confidential relationship had been established was done at Defendant's peril.

In addition, we credit Mr. Edwards' Affidavit that he never reviewed the box of materials sent to him by defense counsel. In their Reply Brief, Defendants do not dispute that Mr. Edwards never reviewed the box of case materials. Defs. Reply, 4-5. We also note that we do not know if the material or information sent to Mr. Edwards actually should be considered confidential and privileged as we only have defense counsels' conclusory statement. It could be as suggested by Plaintiff's counsel that some or all of the material is subject to discovery and would be available for review by Mr. Edwards.

Defendants instead argue that they did not "identify any specific, confidential information" provided to Mr. Edwards in their public filing in order to protect counsel's "initial impressions of the case and a summary of its defense strategy." Id. 5. Accordingly, Defendants offer to provide to the Court an underacted version of the email sent to Mr. Edwards on January

23, 2014 for evaluation. Id., referring to Exhibit C. However, based on our determination that such information was conveyed prior to the existence of a confidential relationship there is no need for us to review the material. In any event, these issues can be explored during expert depositions and, if appropriate, counsel may choose to renew this motion.

We conclude that "despite the existence of a formal contractual relationship, so little of substance occur[ed] during the course of the relationship that neither the integrity of the trial process, nor the interests of the party who retained the expert, would be served by blanket disqualification." Paul v. Rawlings Sporting Goods Co., 123 F.R.D. 271, 278 (S.D. Ohio 1988). Accordingly we will deny Defendants' motion to disqualify.

The following **ORDER** is hereby entered:

AND NOW, this 14th day of August, 2014, for the reasons set forth above, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1. Defendants' Motion for a Protective Order and to Preclude the Use of Sworn Witness Statements Taken in Violation of the Rules of Professional Conduct (ECF No. 59) be and hereby is DENIED; and

2. Defendants' Motion to Disqualify Robert Edwards from Testifying for and Consulting with Any Party (ECF No. 69) be and hereby is DENIED.

Maurice B. Cohill, Jr.
Senior District Court Judge